Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7390 | **DATE** | August 6, 2001 |
| **CASE TITLE** | *UNITED STATES OF AMERICA EX REL. VERNON SMITH v. RICHARD MCVICAR* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum and Order, Petitioner Vernon Smith's Petition for Writ of Habeas Corpus [1-1], pursuant to 28 U.S.C. § 2254, is DENIED and this case is dismissed with prejudice. This is a final judgment and the clerk of the court is directed to enter a Rule 58 judgment and terminate this case from this Court's docket. It is so ordered.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | 8/10/01 date docketed | |
| | Notified counsel by telephone. | FILED FOR DOCKETING 01 AUG -9 AM 8:58 | docketing deputy initials | 14 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| RTS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. VERNON SMITH, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>RICHARD McVICAR, Warden, )<br>)<br>Respondent. ) | Hon. Blanche M. Manning<br><br>No. 98 C 7390 |

DOCKETED AUG 1 0 2001

## MEMORANDUM AND ORDER

Petitioner Vernon Smith seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, Petitioner's writ is DENIED.

## BACKGROUND

### A. The Antiterrorism and Effective Death Penalty Act

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 100 Stat. 1214 ("AEDPA"), which amended the statutory provisions governing federal writs of habeas corpus, became effective on April 24, 1996. Therefore, because Petitioner filed this petition on December 4, 1998, the AEDPA is applicable to this case. See Long v. Krenke, 138 F.3d 1160, 1163 (7th Cir. 1998).

Under the AEDPA, jurisdiction over Petitioner's section 2254 petition is proper only if it is not a "second or successive" petition and is timely. 28 U.S.C. § 2244(b) & (d). To be timely, the petition for writ must be filed within one year after the highest state court has denied petitioner leave to appeal. 28 U.S.C. § 2244(d)(1)(A). Because this is Petitioner's first section 2254 petition, and Petitioner filed his petition within one year after the Illinois Supreme Court

14

denied his petition for leave to appeal, this Court has jurisdiction under the AEDPA. 28 U.S.C. 2244(d)(1)(A); Burris v. Parke, 95 F.3d 465, 467 (7th Cir. 1996).

**B.     Facts**

On June 18, 1997, after a bench trial, Petitioner was convicted of burglary of an auto repair shop and sentenced to ten years in prison. At trial, two eyewitnesses identified him as the man who burglarized a truck repair shop owned by Zbigniew Szwajnos. On December 6, 1996, at 9:30 p.m., Mr. Szwajnos and two of his employees, Alex Fidella and Andy Sieczak were in an office connected to the repair shop. At the time, the shop's interior and exterior lights were on and an overhanging garage door on the west side of the building was completely raised and open. While in the office, Mr. Szwajnos and his two employees heard a noise in the work area. Mr. Fidella investigated but returned to the office after failing to discover the source of the noise. After hearing the noise a second time, Mr. Szwajnos went into the garage and saw an African American male standing in the middle of the garage by a toolbox holding a wrench in his hand. The man was wearing a blue hooded sweatshirt, with the hood pulled up over his head. After a delay of one to two seconds, during which time Mr. Azwajnos observed the intruder, the hooded man ran out the repair shop through the overhanging door.

Mr. Szwajnos and his two employees began chasing the man on foot. At some point Mr. Fidella returned to the garage and obtained a car to continue the search. Eventually, Mr. Fidella and Mr. Szwajnos, who had joined Mr. Fidella in the car, spotted the man running down the street with Mr. Sieczak giving chase. After briefly losing sight of the man, Mr. Szwajnos found the intruder walking down the street, wearing the same blue hooded sweatshirt. Mr. Szwajnos exited the car, grabbed the man by the arm and attempted to bring him back to the garage to call

2

the police. The man, however, broke free and ran away. Mr. Sieczak, Mr. Swanjnos, and Mr. Fidella then returned to the garage and called the police.

The police searched the surrounding neighborhood and detained the Petitioner who fit the description provided by the victims. In addition to fitting the general description, the police testified that after Petitioner saw the police car, Petitioner turned and walked in the opposite direction of the police. The police brought Petitioner back to the garage where Mr. Szwajnos and Mr. Sieczak identified Petitioner as the intruder in the garage.

Following a bench trial, at which Petitioner was represented by the Cook County Public Defender, Petitioner was convicted of burglary and sentenced to ten years in prison. Following his conviction, Petitioner's appointed appellate counsel filed a motion to withdraw as counsel pursuant to Anders v. California, 386 U.S. 738 (1967).

On June 17, 1998 the Illinois Appellate Court granted the Anders motion and affirmed Petitioner's conviction. Subsequently, the Illinois Supreme Court denied Petitioner's petition for leave to appeal. On December 4, 1998, Petitioner filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

## EXHAUSTION AND PROCEDURAL DEFAULT

This Court can review this Petition for Writ of Habeas Corpus only if Petitioner exhausted all his state remedies and avoided procedural default under Illinois law. Bocian v. Godinez, 103 F.3d 465, 468 (7th Cir. 1996). State remedies are exhausted when they are presented to the highest state court for a ruling on the merits or when no means of pursuing review remain available. 28 U.S.C. § 2254(c); see also Farrell v. Lane, 939 F.2d 409, 410 (7th

Cir. 1991); Farrell v. McGinnis, 502 U.S. 944 (1991). Here, the Respondent does not dispute that Petitioner has exhausted all his claims in state court.

Procedural default occurs when a petitioner fails to assert a claim that could have been brought in the state court and the time for asserting the claim has passed. Id. This happens if the petitioner fails to pursue all appeals required by state law, Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991), or fails to fairly present his federal claims to the state court. Resnover v. Pearson, 965 F.2d 1453, 1458-59 (7th Cir. 1992). Procedural default also occurs when the state court did not address the petitioner's federal claims because he failed to meet an independent and adequate state procedural requirement in presenting the claim. Coleman, 501 U.S. at 729; Wainwright v. Sykes, 433 U.S. 72, 87 (1977). Here, the Respondent does not dispute that Petitioner avoided procedural default. Consequently, because Petitioner has exhausted all his state remedies and avoided procedural default, this Court may review his petition.

## STANDARD OF REVIEW

Under the AEDPA, federal courts are forbidden from granting habeas relief with respect to any claim adjudicated on the merits in the state court unless the state court's adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d)(1) & (2).

The first prong of section 2254(d)(1), whether the decision is contrary to Supreme Court precedent, pertains to questions of law. The court reviews the core issues of federal law de novo.

Lindh v. Murphy, 96 F.3d 856, 877 (7th Cir. 1996). The second prong of section 2254(d)(1), whether the decision is based on an unreasonable application of Supreme Court precedent, "tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called 'unreasonable.'" Id. at 870. A state court satisfies the reasonableness standard of section 2254(d)(1) if its application of law to the facts is "at least minimally consistent with the facts and circumstances of the case." Spreitzer v. Peters, 114 F.3d 1435, 1442 (7th Cir. 1997). See also Hall v. Washington, 106 F.3d 742, 748-49 (7th Cir. 1997) (holding that a state court meets the reasonableness standard if its "conclusion . . . is one of several equally plausible outcomes").

## ANALYSIS

Petitioner presents five arguments in support of his petition for habeas corpus: (1) the ramifications of his appellate counsel filing a motion to withdraw as appointed counsel, pursuant to Anders v. California, were not explained to him; (2) his trial counsel was ineffective for failing to: (a) challenge an in-court identification of Petitioner; and (b) conduct discovery and investigate Petitioner's alibi; (3) he should have been put in a line-up upon being arrested and because he was not, the in-court identifications were prejudiced; (4) the state failed to prove guilt beyond a reasonable doubt; and (5) his appellate counsel was ineffective because counsel failed to raise the above mentioned issues on appeal. The Court will address each of these arguments in turn.

### I. Withdrawal Under Anders v. California

Petitioner argues that his appellate counsel failed to inform him of the ramifications of filing a motion to withdraw as counsel pursuant to Anders v. California, 386 U.S. 738 (1967). Under Anders, before an appellate attorney may withdraw, counsel must undertake a

5

conscientious examination of the record and file a brief with the court describing "anything in the record that might arguably support the appeal." Id. at 744. In addition, counsel must furnish a copy of the brief to the defendant to allow the defendant time to respond and/or raise any issues "that he chooses." Id. The Seventh Circuit, in United States v. Edwards, 777 F.2d 364, 365 (7th Cir. 1985), set forth a three part test to determine the sufficiency of an Anders brief. Under this test, the brief should:

> (1) identify, with record references and case citations, any feature of the proceeding in the [] court that a court or another lawyer might conceivably think worth citing to the appellate court as a possible ground for error; (2) sketch the argument for reversal that might be made with respect to each such potential ground for error; and (3) explain why [the attorney] nevertheless believes that none of these arguments is nonfrivolous.

Id. The Anders brief does not, however, "require counsel to submit arguments as detailed as those that would be in a merits brief, but counsel must at least outline the arguments that he will opine are frivolous, and briefly explain the basis for that opinion." United States v. Fernandez, 174 F.3d 900, 901 (7th Cir. 1999).

In reviewing counsel's Anders brief, the court should determine if the brief "intelligently discusses the issues that a case of the sort might be expected to involve." United States v. Tabb, 125 F.3d 583, 584 (7th Cir. 1999). The court, however, does not need to conduct an independent review of the record to "determine whether a more ingenious lawyer might have found additional issues that may not be frivolous." Id.

Here, Petitioner does not discuss the merits of the Anders brief. Instead, he simply contends that "appellate counsel never told Petitioner of the ramification [sic] of Anders." The record, however, reveals that appellate counsel sent Petitioner a copy of the Anders brief and a letter explaining the consequences of Anders. After receiving this information, Petitioner filed

6

objections to the brief, raising additional issues not addressed in the Anders brief, which the Illinois Appellate Court rejected.

Nevertheless, this Court has examined the Anders brief and the Illinois Appellate Court's grant of appellate counsel's motion to withdraw and finds that the brief was sufficient under Edwards and that the appellate court did not err in granting the motion to withdraw. The Anders brief set forth three possible issues for appeal which counsel believed were without merit: (1) waiver of right to jury trial; (2) guilt beyond a reasonable doubt; and (3) the length of Petitioner's sentence. In objecting to the motion to withdraw, Petitioner raised the same five issues that he has raised in the instant Petition. As explained below, this Court agrees with the Illinois Appellate Court in that these five issues are without merit. Therefore, this Court holds that Petitioner's Anders argument is without merit because the Illinois Appellate Court's decision to grant appellate counsel's withdrawal was not contrary to established Supreme Court precedent.

## II. Ineffective Assistance of Counsel

Petitioner contends that both his trial and appellate counsel were ineffective. The Court will discuss each of these issues separately.

### A. Trial Counsel

Petitioner contends that his trial counsel was ineffective for two reasons. First, Petitioner claims his trial counsel failed to attack in-court identifications by two witnesses that were unfairly suggestive. According to Petitioner, "both state witness' [sic] were told who Petitioner was prior to court in the hallway, and counsel did nothing about it." Second, Petitioner contends that his trial counsel was ineffective for failing to "file [] discovery or investigate [Petitioner's] alibi."

7

In reviewing an allegation of ineffective assistance of counsel, the court must presume counsel is effective. Arnago-Alverev v. United States, 134 F.2d 888, 892 (7th Cir. 1998). A petitioner bears a "heavy burden in proving that [his] attorney rendered ineffective assistance of counsel." U.S. v. Holland, 992 F.2d 687, 691 (7th Cir. 1993). A trial court will only reverse a conviction for ineffective assistance of counsel if the petitioner can satisfy the two prong test established in Strickland v. Washington, 466 U.S. 668 (1984). The petitioner must establish: (1) that his counsel's representation "fell below an objective standard of reasonableness"; and (2) that attorney's deficient performance prejudiced the defense. Id. at 687. The petitioner bears the burden of both proof and persuasion that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment . . . [and] that the deficient performance prejudiced the defense." U.S. v. Davenport, 986 F.2d 1047, 1049 (7th Cir. 1993), quoting Strickland, 466 U.S. at 687.

When determining whether an attorney's performance was objectively reasonable, courts presume that an attorney employed reasonable judgment and should not second-guess the attorney's strategic decisions. Strickland, 466 U.S. at 689. Counsel is not ineffective merely because he did not raise all possible claims of error. Page v. United States, 884 F.2d 300, 302 (7th Cir. 1989). To show that counsel's performance is deficient, petitioner must point out and make clear to the court the specific acts or omissions forming the basis of his claim. United States v. Trevino, 60 F.3d 333, 338 (7th Cir. 1995). The court must then determine whether the alleged acts or omissions were made outside the wide range of professional competency. Arnago-Alverez, 134 F.2d at 892. In most cases, "[c]laims that an attorney was ineffective involve inquiries into the motivation behind an attorney's trial strategy. This in turn requires

8

facts which are usually not contained in the trial record. Without such facts[,] trial counsel's alleged lapses or errors will be presumed tactical moves, flawed only in hindsight." Unites States v. Trevino, 60 F.3d 333, 338 (7th Cir. 1995).

To satisfy the prejudice prong, the petitioner must demonstrate that, but for his lawyer's alleged errors, there is a reasonable probability that the result of the proceedings would have been different. Id. at 694. Moreover, the claims of prejudice must be specific; the petitioner cannot simply allege in a "conclusory fashion" that he was prejudiced. United States v. Rosch, 1995 WL 680463, at *3 (N.D. Ill. Nov. 13, 1995). Instead, the petitioner must demonstrate how he was actually prejudiced – e.g., petitioner must show that there was a reasonable probability that his counsel's errors deprived him of a fair trial. Trevino, 60 F.3d at 337.

Here, the record reveals that Petitioner's trial counsel, contrary to Petitioner's assertion, did address the possibility of a suggestive pre-trial identification. Petitioner's attorney specifically questioned Mr. Sieczak on whether Mr. Szwajnos pointed out the Petitioner to Mr. Sieczak before trial, outside the courtroom. The judge had the opportunity consider the probative value of Mr. Sieczak's in-court identification in light of the possible prejudice. In considering all the evidence, including the witnesses' credibility and the reliability of the in-court identifications, the judge still found Petitioner guilty beyond a reasonable doubt.[1]

Petitioner also contends that his trial counsel was ineffective for failing to contact an alleged alibi witness. In Montgomery v. Petersen, 846 F.2d 407, 413 (7th Cir. 1988), the court found that because the defendant's trial counsel failed to investigate alibi witnesses, who would

---

[1] Moreover, as explained below, the witnesses' in-court identifications were consistent with Supreme Court precedent.

9

have been the only disinterested witness in the case, counsel's representation fell below an objective standard of reasonableness. The record in Montgomery reflected that the defendant requested that his counsel contact a specific alibi witness. Id.

Here, unlike the defendant in Montgomery, Petitioner makes only broad allegations that alibi witnesses were not contacted. The record is devoid of any indication as to who the witnesses are and what they would say.[2] Although failure to investigate an alibi witness can be grounds for ineffective assistance of counsel, the Seventh Circuit has clearly held that "a habeas court cannot even begin to apply Strickland's standards to such a claim unless and until the petitioner makes a specific, affirmative showing as to what the missing evidence or testimony would have been." Partee v. Lane, 926 F.2d 694, 701 (7th Cir. 1991) (reversing district court's grant of writ). Without specific proof, the court cannot assess whether counsel's performance was deficient, and therefore it is "nearly impossible to determine whether the petitioner was prejudiced." Id. Thus as required by Partee, Petitioner has failed to point out and make clear to the Court the specific acts or omissions forming the basis of his claim. Therefore, this Court rejects Petitioner's challenge to trial counsel's discovery tactics.

Consequently, the Court finds that Petitioner's argument for ineffective trial counsel fails because it has not been shown that trial counsel's representation fell below an objective standard of reasonableness.

Moreover, even if Petitioner's trial counsel's performance fell below an objectively reasonable standard, Petitioner cannot prevail because he has not demonstrated that the result of

---

[2]  The Court notes that Petitioner did not point to any specific alibi witnesses in his Petition and was given leave to file a reply but failed to file one.

10

the trial would have been different if the in-court identifications would have been excluded. In addition to the in-court identifications, as explained below, two witnesses made valid and reliable out-of-court identifications of Petitioner right after the attempted burglary. Moreover, the arresting police officer testified that he spotted Petitioner near the crime scene matching the description that the witnesses reported when they phoned the police. When Petitioner saw the police officer, he turned and walked in the opposite direction of the police. Consequently, given the other evidence against Petitioner, this Court finds that Petitioner cannot prevail because he has not demonstrated that the result of the trial would have been different even if his lawyer had successfully moved the trial court to exclude the in-court identifications or located Petitioner's alleged unidentified alibi witnesses.

### B. Appellate Counsel

Petitioner also contends that his appellate counsel was ineffective because the appellate counsel failed to recognize all the errors that occurred at trial.

An appellate counsel is not ineffective merely because he did not raise all possible claims of error. Page v. United States, 884 F.2d 300, 302 (7th Cir. 1989). However, where the appellate counsel failed to raise "a significant and obvious issue" which may have resulted in reversal, "the failure could be viewed as deficient performance." Gray v. Greer, 644 F.2d 644, 646 (7th Cir. 1986).

Similar to the standard for evaluating the effectiveness of trial counsel, to prove that his appellate counsel was ineffective because it did not file a merits brief, the Petitioner must satisfy the requirements found in Strickland. Smith v. Robins, 528 U.S. 259, 285 (2000). First, Petitioner must show that his counsel was objectively unreasonable in failing to find an arguable

issue to appeal. Strickland, 466 U.S. at 687-91. If Petitioner is able to show his counsel was objectively unreasonable, Petitioner must then show "a reasonable probability that but for his counsel's unreasonable failure to file a merits brief, [Petitioner] would have prevailed on his appeal." Robins, 528 U.S. at 285-86, citing Strickland, 466 U.S. at 694. To satisfy the first prong of Strickland, the petitioner only needs to show that a "reasonably competent attorney would have found one frivolous issue warranting a merits brief, rather than showing that a particular non-frivolous issue was clearly stronger than issues that counsel did present." Robins 528 U.S. at 766.

This Court finds that Petitioner fails meet the burden required by Strickland and Robins. Petitioner has not shown a reasonable probability that if his appellate counsel had filed a merits brief, Petitioner would have been successful on appeal. In addition to reviewing the arguments submitted with counsel's Anders brief, the Illinois Appellate Court also reviewed the arguments Petitioner raised in his "Opposition to Motion to Withdraw as Appointed Counsel Pursuant to Anders v. California" and found these arguments, which are the same issues raised in the instant Petition, without merit. Consequently, because the appellate court failed to find any merit in Petitioner's objections, an appellate counsel raising these same points in a merits brief would not have resulted in a successful appeal.

### III. No Line-Up and Prejudicial In-Court Identification

There are two identifications in this case that Petitioner argues are suggestive. First, Petitioner argues that the police never placed him in a line-up. The second identification at issue is the in-court identification that took place following the assistant state's attorney pointing out

the Petitioner to the first witness before that witness' testimony and then that witness pointing out the Petitioner to the second witness before the second witness' in-court identification.

Eyewitness in-court identification testimony can violate a defendant's Constitutional right to Due Process if it was preceded by an "unnecessarily suggestive" pretrial identification. See Neil v. Biggers, 409 U.S. 188, 198 (1972); Stovall v. Denno, 388 U.S. 293, 301-02 (1967), overruled on other grounds, Griffith v. Kentucky, 479 U.S. 314 (1987); Cossel v. Miller, 229 F.3d 649, 655 (7th Cir. 2000); Armstrong v. Young, 34 F.3d 421, 427 (7th Cir. 1994). The constitutionality of a challenged pretrial identification procedure is analyzed in two steps. A petitioner must first show that the initial identification procedures were unduly suggestive. Armstrong, 34 F.3d at 427. If shown that the identification procedure was unduly suggestive, the court must then determine whether the procedures where "so unduly suggestive as to give rise to irreparable mistaken identification -- or stated in the affirmative, whether the identification, viewed under the totality of the circumstances, is reliable despite suggestive procedure[s]." United States v. Duprey, 895 F.2d 303, 307 (7th Cir. 1989). Accord Manson v. Brathwaite, 432 U.S. 98, 114 (1977); Neil, 409 U.S. at 198-99.

The Supreme Court in Neil laid out the following factors to consider when determining whether under the "totality of the circumstances," the identification was reliable even though the initial identification procedure was unduly suggestive:

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Neil, 409 U.S. at 199-200. The Court will address each of these factors in turn.

A.  **Opportunity of the Witness to View the Defendant at the Time of the Crime**

At the time of the crime, although it was 9:30 p.m., all the garage interior and exterior lights were on and Mr. Szwajnos and Mr. Sieczak viewed Petitioner face to face for a second or two. Although the man was wearing a hood, both witnesses stated that the hood only coved up to the man's ears. This first face to face confrontation took place from 10 to 15 feet apart. During the second confrontation, both Mr. Szwajnos and Mr. Sieczak confronted the man for a longer duration and at a closer distance. Mr. Szwajnos described the distance as one to one and half feet and Mr. Sieczak described it as an "arms length". In addition, this second confrontation was long enough that the parties had a conversation. These facts all support the witness' ability to reliably identify Petitioner both initially, in front of the police car, and in-court, regardless of the suggestive nature of the identifications.

B.  **Accuracy of the Witness' Prior Description of the Criminal**

The record indicates that the police initially received a call of a burglary in progress and that the man fleeing the scene was wearing a blue hooded sweatshirt. A prior fully accurate description, however, is not essential to a finding of reliability of a later identification. United States ex rel. Hudson v. Brierton, 699 F.2d 917, 925 (7th Cir. 1983) (upholding identification as valid where the witness did not give a description of the defendant prior to identifying him).

C.  **Degree of Attention**

There is nothing in the record specifically dealing with the degree of attention the witnesses had during the two confrontations with the Petitioner. The witnesses initially identified Petitioner without hesitation, which suggests that the witnesses' possessed a high

14

degree of attention while viewing the man in the garage and during the confrontation on the street. Moreover, because the witnesses were aware that the defendant had committed a crime, they "had a desire to seek out and retain an image of [him]." Id.

### D. Level of Certainty Demonstrated by the Witness at the Confrontation

The record does not indicate that the witnesses lacked certainty in identifying Petitioner during the initial identification on December 6, 1996. Likewise, during the in-court identifications, neither witness hesitated nor showed any uncertainty in pointing out Petitioner as the man who burglarized the garage. Although, the pre-trial identification of Petitioner was suggestive, the trial court had the best opportunity to weight the credibility of the witnesses in light of the out-of-court identifications and found that the in-court identifications were still reliable. This Court, as it is required to do, defers to the trial court's determination as to credibility of the witness with respect to the in-court identification.

### E. Length of Time Between the Crime and the Confrontation

Ten minutes passed between the time Mr. Szwanjos and Mr. Sieczak returned to the garage after chasing Petitioner and the time the police brought Petitioner to the garage for identification. As for the in-court identification, the burglary and initial identification of Petitioner took place on December 6, 1996. Mr. Szwanjos testified on May 2, 1997 and Mr. Sieczak testified on May 14, 1997. The ten minutes between the end of the chase and the identification of Petitioner supports the conclusion that the identification was reliable. United States ex rel. Hudson, 699 F.2d at 925 (identification made within a few hours of the crime "likely" results in an "image of the assailant [which] was fresh in [the witness'] mind"). There was then a five- month span of time between the first identification and the in-court identification

which, although not ideal, does not render the in-court identification unreliable. See Neil, 409 U.S. at 199-200 (finding an identification that took place seven months after the offense reliable).

Moreover, in United States ex rel. Kosik v. Napoli, No. 83 C 9138, 1985 U.S. Dist. LEXIS 23645, *10 (N.D. Ill. Jan. 7, 1985), the court upheld an in-court identification similar to the ones at issue here. At a preliminary hearing, the prosecutor pointed out the petitioner to the witness as the defendant during a preliminary hearing. Id. at *5. The witness then identified the petitioner as the person involved in the alleged crime. Id.

In reviewing the petition for writ of habeas corpus, the district court rejected the state's contention that the prosecutor pointing out the petitioner was justified because the "petitioner had already been identified." Id. at 9-10. According to the court, the "previous [out-of-court] identifications [] were far from strong." Id. The witness was able to pick-out the petitioner in a photo spread but failed to pick out the petitioner in a line-up. Id. The court found that the procedures at the preliminary hearing were highly suggestive and caused a substantial likelihood of misidentification. Id. at *9. However, applying the Supreme Court's five factor test in determining the totality of the circumstances, the court found the identifications at trial were constitutionally reliable. Id. at *17.

Here, like the court in Kosik, considering the totality of the circumstances, this Court finds the in-court identifications of Petitioner were reliable notwithstanding the potential suggestive nature of the out-of-court identifications.

IV. **Guilt Beyond a Reasonable Doubt**

Petitioner also contends that the state failed to prove guilt beyond a reasonable doubt because no evidence was introduced to suggest any property was taken from the victim's shop.

16

In affirming the conviction, the appellate court stated that, pursuant to 720 ILCS 5/19-1, a burglary occurs when a person makes an unlawful entry with the intent to commit a theft. The state does not need to prove that the defendant actually took anything to sustain a conviction for burglary. In re Velez, 394 N.E.2d 525, 526-27 (Ill. App. Ct. 1979). Therefore, the appellate court held that the state had no burden to show that Petitioner took anything in order to sustain a conviction for burglary. Id.

Moreover, the evidence at trial showed that the garage is a business, and that instead of going to the office to talk with the repairmen, Petitioner was seen standing in the middle of the garage by a toolbox holding a wrench in his hand. After he was seen by an employee, Petitioner ran out of the repair shop. After running out of the garage, Petitioner struggled with the garage employees after they caught him running down the street. Petitioner was then spotted by the police near the crime scene, matching the description of the intruder at the garage. After seeing the police, he turned and walked in the opposite direction of the police. Under the facts in In re Velez, 394 N.E.2d at 526-27, in which the court inferred intent from the defendant's act of running away from the alleged crime scene, Petitioner's actions were sufficient for the trial court to find that he intended to committed a theft, regardless of whether he actually took anything from the repair shop.

Consequently, because this Court finds nothing that suggests a result to the contrary, the Court rejects Petitioner's contention that the State failed to prove guilt beyond a reasonable doubt.

17

## CONCLUSION

For the reasons set forth above, Petitioner Vernon Smith's Petition for Writ of Habeas Corpus [1-1], pursuant to 28 U.S.C. § 2254, is DENIED and this case is dismissed with prejudice. This is a final judgment and the clerk of the court is directed to enter a Rule 58 judgment and terminate this case from this Court's docket. It is so ordered.

ENTER:

*Blanche M. Manning*
BLANCHE M. MANNING
U.S. DISTRICT COURT JUDGE

DATE: 8/6/01